IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KILEY THORNBURG,** *et al.*, | : | |
| | : | |
| vs. | : | Civil Action No. 2:21-cv-3905 |
| | : | |
| **REFLEKTIONS, LTD.,** | : | Judge Watson |
| | : | |
| Defendant. | : | Magistrate Judge Deavers |
| | : | |
| | : | |
| | : | |

## REVISED JOINT MOTION TO APPROVE SETTLEMENT OF FLSA COLLECTIVE ACTION SETTLEMENT AND CLAIMS PROCEDURE

Named Plaintiffs Kiley Thornburg, Karcy Reymer, and Stephanie Dura, individually and on behalf of all Putative Class Members ("Plaintiffs"), and Defendant Reflektions, Ltd. ("Reflektions," collectively with Plaintiffs, the "Parties"), respectfully move this Court for an Order approving the Fair Labor Standards Act ("FLSA") settlement reached by the parties as follows:

1.  Named Plaintiffs filed the above-styled collective and class action Lawsuit against Defendant Reflektions, Ltd. in the United States District Court for the Southern District of Ohio, Eastern Division (the "Court") on July 8, 2021.

2.  Named Plaintiffs assert that Defendant violated various provisions of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). More specifically, Plaintiffs allege that Reflektions failed to properly pay an overtime premium to employees who were paid on an hourly basis and who worked more than 40 total hours in any workweek through a combination of awake and sleep shifts. Defendant has denied, and continues to deny, all claims.

3. Named Plaintiffs brought the FLSA claims on behalf of themselves and all others similarly situated. Plaintiffs defined the proposed class as:

> All current and former Direct Service Professionals employed by Defendants during the three (3) years prior to the date of filing this Complaint through the date of conditional certification, who were paid on an hourly basis and worked more than 40 total hours in any workweek through a combination of awake and sleep shifts.

4. To avoid further litigation costs, and the time and resources attendant to litigation, Defendant and Plaintiffs, on behalf of themselves and all similarly situated individuals, have agreed to settle the claims in the Lawsuit. Defendant and Plaintiffs have entered into a Settlement and Release Agreement ("Settlement Agreement" or "Agreement") which will take effect following the Court's approval. The terms of the settlement are reasonable and appropriate and fair to all parties involved and a compromise of bona fide disputed claims. Accordingly, the Parties ask the Court to approve the settlement and enter an order approving the terms of the settlement.

5. Bona fide disputes and controversies exist among the Parties, both as to liability and the amount thereof, if any, including disputes concerning the amount of overtime pay due, if any, the proper method of calculating any overtime allegedly owed, the availability of any liquidated damages and/or interest, and whether any alleged violations constitute willful violations of the FLSA. The current settlement before the Court is the result of these bone fide disputes.

6. While Defendant denies liability, the Parties individually reviewed compensation information, including payroll data and schedules, to reasonably approximate the alleged potential damages at issue in the case. The exchange of this information allowed the Parties to form a basis for productive negotiations. The Parties conducted informal discovery, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted in the case. The parties then engaged in an arms-length negotiation through a private Mediator, David Kamp.

7. Based upon Plaintiffs' counsel's investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including Plaintiffs' counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the settlement reached by the Parties, Plaintiffs' counsel has concluded that the settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs. While Defendants deny liability, the Parties and their counsel recognize that further conduct of this case would be time-consuming and expensive and are mindful of the uncertainly and risks inherent in litigation, and that it is prudent and beneficial that Plaintiffs' claims be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement. In addition, because of the various defenses asserted by Defendants and the possibility that Defendants may have successfully defeated or limited some or all of Plaintiffs' claims, including those claims related to similarly situated status, willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to through lengthy discovery and then to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possibly an appeal.

8. The Parties agree that the terms of the settlement are fair and equitable and were negotiated at arm's length with all Parties being fairly and fully represented by counsel of their choosing. The settlement amount takes into account the number of overtime hours claimed by Plaintiffs, the number of workweeks worked by the Plaintiffs during the relevant period, and the amount of unpaid overtime to which Plaintiffs allege they are entitled.

9. The settlement was negotiated by the attorneys, with the assistance of a highly skilled and specialized mediator. After the parties reached an agreement on the settlement amount,

the Parties engaged in further negotiations concerning the specific terms of the written settlement document. Further, it is important to note that the lead Named Plaintiff, Kiley Thornburg, on behalf of the opt-ins, deems this settlement fair and reasonable. Plaintiff Thornburg took an active role throughout this litigation.

## **THE SETTLEMENT TERMS**

10. The Settlement will cover forty-four (44) putative class members ("Settlement Participants"), including Named Plaintiffs. (See Exhibit A, Declaration of Greg R. Mansell, ¶3). Notice shall be issued to every Settlement Participant, as defined below. Those who elect to take their share of the settlement proceeds shall do so by affirmatively opting-in to the settlement. Those who affirmatively opt-in to the settlement will become "Claimants." Named Plaintiffs and any other Settlement Participant who has already opted-into this action, including Andrea Raver, are not required to opt-in, as they have already joined the case.

11. The settlement shall be administered by a claims administrator. Defendant will provide the claims administrator a class list of the Settlement Participants that contains last known home addresses, email addresses, and other reasonable requests for information by the claims administrator to effectuate the settlement. Defendant will agree to distribution of notice by both regular mail and email, if available.

12. The maximum settlement amount is $225,000.00 ("Settlement Amount"), which sum will cover: (a) unpaid overtime wage for Claimants covering a two-year look back period; (b) Named Plaintiffs' Service Awards; (c) Plaintiffs' Counsel's attorneys' fees and expenses; and (d) the cost of settlement administration. (See Settlement and Release Agreement, attached as Exhibit B)

13. The starting point for settlement proceeds to Claimants are set forth in Exhibit B-2 to the Settlement Agreement. The settlement proceeds ultimately paid to each Claimant will depend on a participation calculation based on the percentage of the total dollar amount of claims made. If the Settlement Participant opt-in rate is less than 75 percent of the net Settlement Proceeds Available for Claimants, then a portion of the Settlement Amount will revert to Reflektions. The reversion would be based on the pro-ration between 75 percent and the percentage of the funds claimed by Settlement Participants based upon the allocation set forth in Exhibit B-2. For example, if only 50 percent of Settlement Proceeds Available for Claimants are Claimed after the Opt-In Period closes, one-third of the unclaimed funds would revert to Reflektions and two-thirds would be distributed to the opt-in Claimants, pro rata, based on the allocation in the spreadsheet attached hereto as Exhibit B-2. If the total unpaid wages of all Claimants exceeds the Settlement Proceeds Available for Claimants, then Claimants will receive a pro-rata share of the Settlement Proceeds Available for Claimants based on the amounts in Exhibit B-2. (Exhibit B, Sec. 3, ¶ 1.8).

14. Based on Plaintiffs' counsel's experience participating in dozens of similar settlements and claims made procedures, it is unlikely that any Claimant who opts-in to join the lawsuit will receive less than 100% of the wages alleged owed to that Claimant. (Exh. A, Mansell Declaration, ¶9). Plaintiffs' counsel believes the proposed Settlement is in the best interests of all Plaintiffs.

15. Of the total Settlement Amount, a cumulative amount of $12,500.00 will be paid to Named Plaintiffs as Service Awards for their efforts in this matter and in exchange for a general release. (See Exhibit B, Sec. II, ¶ (l), (n)). The Service Awards will be distributed as follows: a) $7,500 to Kiley Thornburg, b) $2,500 to Karcy Reymer, and c) $2,500 to Stephanie Dura. (Id.)

16. Of the Total Settlement Payment, $75,000 (one-third) will be paid to Plaintiffs' Class Counsel for attorneys' fees. Plaintiffs' Counsel will also receive an award of the actual costs incurred in the action, including the cost of claims administration, to be determined. (Exh. A, Mansell Declaration ¶10).

17. In addition to the Total Settlement Payment, Defendant will pay the employer-side taxes on the W-2 payments to Plaintiff and Claimants, as well as the full amount of the mediation fee for the mediator utilized by the parties in this matter. (Exhibit B, Sec. 3, ¶ 1.9).

18. In exchange for these payments and other consideration provided for in the Agreement, the Action will be dismissed, and Plaintiffs and the Claimants will release Defendant from any and all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses, whether known or unknown, pursuant to the FLSA and other applicable state wage and hour laws, for the Released Period, which is defined as July 8, 2019 through the date the Court gives approval of the settlement. The proposed Notice of Settlement of Collective Action Lawsuit is attached to the Settlement Agreement as Exhibit B-1. A proposed Order Approving Settlement is attached hereto as Exhibit C.

## THE NOTICE PROCEDURE

19. The settlement agreement provides for Notice to be sent to the Settlement Participants, as defined above. The Notice will include an agreed-upon Opt-In Form, to be used to advise Settlement Participants of the material terms and provisions of the settlement, the procedure and deadline for participating in this settlement, and their rights with respect to this settlement. The Notice and Opt-In Form are attached to the Settlement Agreement as Exhibit B-1.

20. The Settlement and Claims Administration procedure shall be performed by a third-party administrator ("Claims Administrator" or "CA") selected by Plaintiffs and approved by Defendant. The dates for the Notice and Settlement procedure as follows:

| | |
|---|---|
| Defendant to provide CA required information to effectuate Notice | Within 5-Business Days of Court Approval of Settlement |
| CA to send Notice to Settlement Participants | Within 15Business Days of Court Approval of Settlement |
| Opt-In Period | 45-calendar days after the date on which Notice is initially mailed |
| CA to provide Counsel with list of Claimants | 5-Business days after close of Opt-In Period |
| Defendant to provide CA settlement funds | 10-Business days after close of Opt-In Period |
| CA to disburse settlement funds | 20-Businessdays after close of Opt-In Period |
| Plaintiffs to Dismiss Lawsuit with Prejudice | 10-Business days after disbursement of settlement funds |

## THE PROPRIETY OF APPROVAL

**A.   The Seven-Factor Standard Is Satisfied.**

21. The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." Landsberg v. Acton Enterprises, Inc., 2008 WL 2468868 at *1, n.1 (S.D. Ohio June 16, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

22. As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" Crawford v. Lexington-Fayette Urban County Government, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23,

7

2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the Crawford court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

UAW v. General Motors Corp., 497 F.3d 615, 626 (6th Cir. 2007) (citing Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir.1992); Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir.1983)), quoted in Crawford, 2008 WL 4724499 at *3. As shown below and in the Declaration of Gregory R. Mansell, this standard supports the approval of the Settlement.

### 1.     No Indicia of Fraud or Collusion Exists.

23.     The Parties' Counsel have extensive experience litigating FLSA claims. The parties exchanged voluminous data and compensation records and then analyzed the data. Then the parties engaged in a detailed factual and legal analysis of the claims and damages. The parties attended a full day mediation on January 18, 2022 with experienced Mediator, David Kamp. The Parties continued to negotiate until a resolution was reached on February 25, 2022. The Agreement was achieved only after arms-length and good faith negotiations between the Parties. (Exh. A, Mansell Dec., ¶6). As such, there is no indicia of fraud or collusion.

### 2.     The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.

24.     The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. In addition, wage and hour class and collective actions, such as this, are inherently complex and time-consuming. Swigart v. Fifth Third Bank, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014)

8

The Parties continue to disagree over the merits of Plaintiffs' claims, as well as the proper method for calculating damages of any overtime allegedly owed. In addition, the Parties disagree about the application of a three-year limitations period and liquidated damages. Moreover, the Parties disagree about whether the claims asserted in the Action can proceed collectively.

25.     If forced to proceed in this action, the Parties would engage in complex, costly, and protracted litigation. The Settlement, on the other hand, provides substantial relief to Plaintiffs and all other similarly situated individuals promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution.

### 3.     Investigation Was Sufficient to Allow the Parties to Act Intelligently.

26.     The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. Prior to filing the Action, Plaintiffs' Counsel performed a factual investigation of the claims to set forth a factually specific and accurate description of the claims. After filing the Action, the Parties engaged in extensive informal discovery, and both Plaintiffs' and Defense Counsel performed lengthy, complex damage calculations. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides. (Exh. A, Mansell Dec., ¶¶5-6).

### 4.     The Risks of Litigation Favor Approval.

27.     Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant denies liability and raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all. (Exh. A, Mansell Dec., ¶5).

### 5. Uncertainty of Recovery Supports Approval.

28. Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeeded on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties disagree.

### 6. Experienced Counsels' Views Favor Approval.

29. The Parties' Counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Plaintiffs' Counsel supports the Settlement as fair and reasonable, and in the best interest of the Plaintiffs and all other similarly situated as a whole, as described in the Declaration of Gregory R. Mansell. (Exh. A, Mansell Dec., ¶¶2, 5-6).

### 7. The Public Interest Favors Approval.

30. Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. Edwards v. City of Mansfield, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); Williams v. K&K Assisted Living LLC, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), quoting, Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1354 (11th Cir. 1992). Settlement agreements assure that plaintiffs and claimants will receive compensation for the alleged violations at issue. As one Court explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." Edwards, 2016 U.S. Dist. LEXIS 64159 at *10. The same is true here. The settlement promotes public interest by providing fair and efficient payments to Claimants, avoiding the

10

continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### B. The Settlement Distributions Are Fair, Reasonable and Adequate.

31. As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." Crawford v. Lexington-Fayette Urban County Government, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for the Plaintiffs.

#### 1. The Individual Payments Are Reasonable and Adequate.

32. While the individual payments cannot be determined until the opt-in window closes, Named Plaintiffs and Claimants who opt into this lawsuit are unlikely to receive less than 100% wages alleged to be owed for a two-year statute of limitations period. (Exh. A, Mansell Dec. ¶9) Providing Claimants a significant percentage, if not all, of their wages through the certainty of a settlement highly favors the fairness of the settlement.

#### 2. The Service Awards Are Proper and Reasonable.

33. Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in In re Dunn & Bradstreet Credit Services Customer Litigation, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing Wolfson v. Riley, 94 F.R.D. 243 (N.D. Ohio 1981); Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003) (noting that "[n]umerous courts" have found that service awards

11

are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class").

34. In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." Dun & Bradstreet, 130 F.R.D. at 374 (citing In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). Plaintiff Thornburg contributed significant time, effort, and detailed factual information enabling the Parties to successfully resolve this matter. She attended a full day of mediation with Mediator Kamp and was actively involved in the settlement discussion throughout the Parties' negotiation. (Exh. A, Mansell Dec., ¶17). Further, Plaintiffs Reymer and Dura contributed detailed factual information and communicated regularly with Plaintiffs' Counsel throughout the litigation to answer questions and provide additional information and input as needed. (Exh. A, Mansell Dec., ¶18). The Parties' submit that the proposed Service Awards are reasonable and proper.

### 3. The Attorneys' Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable.

35. After the Court has confirmed that the terms of settlement are fair to Plaintiff and all others similarly situated, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendant's agreement to pay Plaintiffs' Counsel $75,000.00, or one-third of the Total Settlement Amount in attorneys' fees. It also reflects Defendant's agreement to pay Plaintiffs' Counsel their reasonable expenses incurred in the Action.

36. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The percentage of the fund approach is favor in common fund cases like the instant matter. In Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994), cert. denied, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." Fegley, 19 F.3d at 1134 (quoting United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., 732 F.2d 495, 502 (6th Cir.1984)).

37. Fegley was followed in Bessey v. Packerland Plainwell, Inc. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling Fegley's emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the Bessey court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." Bessey, 2007 WL 3173972, at *4 (citing Rawlings v. Prudential Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord*, In re Revco Securities Litigation, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a

13

fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

38. In determining the reasonableness of the one-third fee, the <u>Bessey</u> court considered the comparative data about Rule 23 class settlements summarized in <u>Shaw v. Toshiba America Information Systems, Inc</u>., 91 F. Supp. 2d 942 (E.D. Tex. 2000), discussed in <u>Bessey</u>, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

<u>Shaw</u>, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in <u>Shaw</u> and <u>Bessey</u> showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. As discussed above, before deductions, Claimants will receive a significant percentage, if not 100%, of their alleged overtime wages based on a two-year statute of limitations period. Therefore, the attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiffs and Claimants.

Moreover, this Court has recently approved an award of one-third of the total settlement amount. See, e.g., *Croskey v. Hogan Services, Inc*., No. 2:20-cv-3060, 2021 WL 3012278, at *2 (SD Ohio July 15, 2021) (approving an attorneys' fees award of $91,666.67, one-third of the total settlement); and *O'Neil v. Miller Pipeline,* LLC, No. 2:20-cv-4034, 2021 WL 5376235, at *2 (SD Ohio November 2, 2021) (approving an award of $148,333 for attorneys' fees, which represented

14

approximately one-third of the total settlement), citing *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District."); *Morse v. NTI Services, Corp.*, Case No. 2:20-cv-02173, 2021 WL 4350485 at *2 (S.D. Ohio September 17,2021) (finding attorney fees award that represents one-third of the total settlement amount are reasonable): *Bailey v. Paradies Shops, LLC*, Case No. 2:20-cv-2610, 2021 WL 3662466 at *6 (S.D. Ohio August 18, 2021) (In finding a one-third attorney fees request to be reasonable, the Court noted, "District courts have approved collective and class actions fee requests when the fee is one-third of the total settlement amount.").

39. The attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could succeed. Therefore, the Plaintiffs and all others similarly situated were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants approval.

## **CONCLUSION**

40. The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the

proposed Order Approving Settlement; (2) approve Plaintiffs' Counsel's request for attorneys' fees, costs, and expenses; (3) approve the Named Plaintiffs' Service Payment; (4) approve the Notice of Settlement of Collective Action Lawsuit; and (5) retain jurisdiction to enforce the Settlement.

Respectfully submitted,

/s/ *Carrie J. Dyer*
Greg R. Mansell (0085197)
(Greg@MansellLawLLC.com)
Carrie J. Dyer (0090539)
(Carrie@MansellLawLLC.com)
Mansell Law, LLC
1457 S. High St.
Columbus, OH 43207
Ph: 614-610-4134
Fax: 614-547-3614
*Attorneys for Plaintiff*

/s/ *Jeremy D. Smith (per email auth.)*
Jamie Goetz-Anderson (0083562)
Jeremy D. Smith (0088539)
JACKSON LEWIS P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio 45202
Telephone (513) 898-0050
Fax: (513) 898-0051
Email: Jamie.Goetz-Anderson@jacksonlewis.com
Email: Jeremy.Smith@jacksonlewis.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

      I certify that on June 3, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      /s/*Carrie J. Dyer*
      Carrie J. Dyer (0090539)