# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and between Named Plaintiffs Kiley Thornburg, Karcy Reymer, and Stephanie Dura ("Plaintiffs" or "Named Plaintiffs") in the Lawsuit designated below, individually and on behalf of all others similar situated, and Defendant Reflektions, Ltd. ("Defendant"). Plaintiffs and Defendant are sometimes referred to hereinafter as the "Parties."

## I. RECITALS

1. Named Plaintiffs filed a collective action Lawsuit against Defendant Reflektions, Ltd. in the United States District Court for the Southern District of Ohio, Eastern Division, entitled: *Thornburg, et al., v. Reflektions, Ltd.,* Case No: 2:21-cv-3905-MHW-EPD.

2. This Settlement and Release Agreement is intended to cover and fully and completely release all claims asserted or that could have been asserted in the Lawsuit against Defendant and others identified in this Agreement as Released Parties (as defined below).

3. Plaintiffs assert that Defendant violated provisions of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA") by failing to pay them all overtime wages. Defendant has denied, and continues to deny, Plaintiffs' claims.

4. Plaintiffs brought the FLSA claims on behalf of themselves, and all others similarly situated. Plaintiffs defined the class as: All current and former Direct Service Professionals employed by Defendant during the three (3) years prior to the date of filing this Complaint through the date of conditional certification, who were paid on an hourly basis and worked more than 40 total hours in any workweek through a combination of awake and sleep shifts.

5. On January 18, 2022, the Parties mediated the Lawsuit before professional mediator David Kamp. The Parties continued to negotiate until a resolution was reached on February 25, 2022. As a result of the Parties' arms-length negotiations, the Settling Parties (as defined below) now agree to settle the Lawsuit.

6. Class Counsel (as defined below) has made a thorough and independent investigation of the facts and law related to the allegations in the Lawsuit. In agreeing to the terms of this Agreement, Class Counsel has considered: (a) the facts developed during the litigation and mediation of the Lawsuit and the law applicable thereto; (b) the facts developed from speaking with Plaintiffs; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendant; and (d) the desirability of consummating this settlement according to the terms of this Agreement. Plaintiffs have also concluded that the terms of this Agreement are fair, reasonable, and adequate, and that it is in the best interest of the Claimants (as defined below) to settle their claims against Defendant pursuant to the terms of this Agreement.

7. Defendant denies the allegations in the Lawsuit, and specifically denies that it engaged in any wrongdoing or that it violated any law in any respect, including, but not limited to, the FLSA or Ohio Minimum Fair Wage Standards Act. Defendant and the Released Parties are entering into this Agreement because, among other things, it will eliminate the burden, risk, and expense of further litigation.

8.  Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession, or indication by or against Defendant or any Released Party, or any one of them, of any fault, wrongdoing, or liability whatsoever.

9.  This Agreement is intended by the Settling Parties (as defined below) to fully, finally, and forever resolve, discharge, and settle the Lawsuits, and to fully and forever release and discharge the Released Claims (as defined below) and Plaintiffs' Released Claims (as defined below), upon and subject to the terms and conditions set forth herein.

10. In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Settling Parties, IT IS HEREBY AGREED, by and between the undersigned, subject to the conditions set forth herein, that the claims of Plaintiffs against Defendant and any Released Party shall be settled, compromised, and dismissed, on the merits and with prejudice, and that Named Plaintiffs' Released Claims and the Claimant's Released Claims shall be finally and fully compromised, settled, and dismissed as to the Released Parties.

## II. DEFINITIONS

In addition to the terms defined elsewhere in the Agreement, the following terms used in this Agreement shall have the meanings ascribed to them below:

a.  "Administration Fees and Costs" shall mean the fees and costs owed and paid to the Claims Administrator for administering the settlement process set forth in this Agreement.

b.  "Defense Counsel" means Jackson Lewis P.C. and their respective attorneys.

c.  "Claimants" means those who elect to take their share of the settlement proceeds by affirmatively opting-in to the settlement, including Named Plaintiffs and/or those who have already opted-into this Lawsuit.

d.  "Class Counsel" means Mansell Law, LLC and its attorneys, who warrant and represent that no other law firms or attorneys are serving in any capacity as Class Counsel.

e.  "Named Plaintiffs' Released Claims" means any and all claims and causes of action (except for claims arising specifically from a breach of this Agreement), whether known or unknown, arising out of or related to Plaintiffs' employment or other relationship with Defendant, and any other events or transactions involving the Released Parties that precede the date of this Agreement. The claims and causes of action released by Named Plaintiffs, in addition the claims asserted in the Lawsuit, include but are not limited to, the following: contract, tort, or other common law, including, without limitation, breach of contract, promissory estoppel, detrimental reliance, wrongful discharge, discrimination on the basis of race, sex, age, national origin, color, religion, sexual orientation, disability or any other characteristic protected under federal or state law, retaliation, failure to accommodate, leave time or benefits, negligence, gross negligence, negligent hiring, negligent supervision, negligent retention, tortious interference with a prospective business relationship, false imprisonment, assault and battery, intentional infliction of emotional distress, slander, libel, fraud, misrepresentation, and invasion of privacy, as well as all claims for salary,

benefits, bonuses, severance pay, or vacation pay; claims for medical bills; all matters in law, in equity, or pursuant to statute, including damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, claims arising under the FLSA, 29 U.S.C. § 200 *et seq*.; Ohio Revised Code, O.R.C. § 4111 *et seq*, 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq*.; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*.; the Age Discrimination in Employment Act, the Equal Pay Act, the Civil Rights Act of 1991, the Family and Medical Leave Act of 1993, 42 U.S.C. § 1981, the Families First Coronavirus Response Act; discrimination, harassment, retaliation claims and worker's compensation retaliation claims under applicable state law; the wage/hour laws and regulations of any state and any other federal, state, or local law, statute, or ordinance affecting or related to Named Plaintiffs' employment and/or relationship with Defendant. Named Plaintiffs waive any right to seek, or accept, employment with any Released Party, and agree that in the event they do seek or apply for such employment, this Agreement shall constitute lawful, sufficient, non-discriminatory and non-retaliatory grounds for denying employment.

      f.    "Attorneys' Fees and Costs" means the amount of attorneys' fees and costs that Defendant has agreed shall be paid for the services provided by Class Counsel to Named Plaintiffs and the Claimants. Attorneys' Fees and Costs shall consist of attorneys' fees in the amount of $75,000.00, or one-third of the Settlement Amount, plus the actual expense and cost incurred in the Lawsuit. "Attorneys' Fees and Costs" is included in the Settlement Amount (defined below) and will compensate Class Counsel for all work performed in the Lawsuit both as of the date of this Agreement as well as for all of the work remaining to be performed in finalizing the case and administering the settlement.

      g.    "Court" means the United States District Court for the Southern District of Ohio, Eastern Division.

      h.    "Effective Date" means the latest date reflected below on which the Parties execute this Agreement.

      i.    "Released Claims" means the Claimants will release any and all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses, whether known or unknown, pursuant to the FLSA and other applicable state wage and hour laws, for the Released Period.

      j.    "Released Parties" means Defendant Reflektions, Ltd., and each of their current, former, and future affiliates, including, without limitation, investors, owners, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of its past or present directors, owners, officers, employees, partners, members, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, personal or legal representatives, in their individual and corporate capacities, and heirs and assigns, and any individual or entity which could be jointly liable with the Released Parties.

k. "Released Period" means July 8, 2019 through the date the Court gives approval for the Settlement.

l. "Service Award" means the $12,500 given to Named Plaintiffs as a service award to be paid from the total Settlement Amount in addition to Named Plaintiffs' Payment as follows: 1) $7,500 to Kiley Thornburg; 2) $2,500 to Karcy Reymer; and 3) $2,500 to Stephanie Dura.

m. "Settlement Amount" is Two Hundred and Twenty-Five Thousand Dollars ($225,000.00). This does not include Defendant's share of the payroll taxes required to be withheld by law or the cost of the mediator, David Kamp.

n. "Settlement Proceeds Available for Claimants" equals the Settlement Amount, less Attorneys' Fees and Costs, Administration Fees and Costs, and Service Award.

o. "Settlement Participants" means all current and former Direct Service Professionals employed by Defendant from July 8, 2019 through the date the Court gives approval for the Settlement, who were paid on an hourly basis and who worked more than 40 hours in any workweek through a combination of awake and sleep shifts. There are a total of forty-four (44) Settlement Participants, including Named Plaintiffs.

p. "Settling Parties" means the Released Parties and the Claimants.

### III. THE SETTLEMENT

**1. Procedure and Consideration**

1.1. The Settlement and Claims Administration procedure shall be performed by a third-party administrator ("Claims Administrator") selected by Class Counsel and approved by Defense Counsel. Defendant shall provide all required information to the Claims Administrator to effectuate sending Notice within 5 business days of the Court's approval of this Settlement. The Administration Fees and Costs owed to the Claims Administrator shall be paid out of the Settlement Amount.

1.2. Within 15 business days of Court approval of this Settlement, the Claims Administrator shall issue Notice to every Settlement Participant (excluding Named Plaintiffs). A true and accurate copy of the Notice to be sent is attached hereto as Exhibit B-1. Those who elect their share of the settlement proceeds shall do so by affirmatively opting-in to the settlement within forty-five (45) calendar days after the date on which Notice is initially mailed to Potential Opt-in Plaintiffs (the "Opt-In Period"). Opt-in forms shall be deemed timely if they are postmarked by the 45th day.

1.3. In the event any Opt-In Form is timely submitted but does not contain a signature or sufficient information to identify a Claimant for compensation purposes, the Claims Administrator shall provide the Potential Claimant a letter, phone call or email requesting such omitted information ("Cure Contact"). In order for the Potential Claimant to be considered a Claimant, the information must be provided by the last day of the Opt-In Period

1.4. Within five (5) business days after the close of the Opt-In Period, the Claims Administrator shall provide all Counsel (1) a list of Claimants and complete electronic copies of all valid and timely returned Opt-In Forms, (2) an accounting of how much is owed in total and to each Claimant pursuant to the formula set forth in this Agreement, including (i) a breakdown of the amount of the payment to be treated as ordinary wages subject to payroll tax withholdings and (ii) the employer's taxes owed and, (3) if requested, the envelopes in which the Opt-In Forms were sent.

1.5. Those who affirmatively opt-in to the settlement will become Claimants. Included in the definition of Claimant and not required to opt-in, are: 1) Named Plaintiffs, and 2) Andrea Raver, who has already filed an opt-in notice. Defendant will provide the settlement administrator a class list of the Settlement Participants that contains last known home addresses, email addresses, if available in Defendant's system, and other reasonable requests for information by the settlement administrator to effectuate the settlement. Defendant will agree to notice by both email and regular mail. Both methods will be utilized where available.

1.6. Within ten (10) business days after the close of the Opt-In Period, Defendant shall provide the Claims Administrator the funds necessary to effectuate the settlement, including employer's side taxes.

1.7. Within twenty (20) business days after the close of the Opt-In Period, the Claims Administrator shall disburse payment for Claimants (including Named Plaintiffs), Attorneys' Fees and Costs, Administration Fees and Costs, and the Service Awards.

1.8. The starting point for settlement proceeds to Claimants are set forth on Exhibit B-2. The settlement proceeds ultimately paid to each Claimant will depend on a participation calculation based on the percentage of the total dollar amount of claims made. If the Settlement Participant opt-in participation is less than 75 percent of the net Settlement Proceeds Available for Claimants, then a portion of the Settlement Amount will revert to Reflektions. The reversion would be based on the pro-ration between 75 percent and the percentage of the funds claimed by Settlement Participants based upon the allocation set forth in Exhibit B-2. For example, if only 50 percent of Settlement Proceeds Available for Claimants are Claimed after the Opt-In Period closes, one-third of the unclaimed funds would revert to Reflektions and two-thirds would be distributed to the opt-in Claimants, pro rata, based on the allocation in the spreadsheet attached hereto as Exhibit B-2. If the total unpaid wages of all Claimants exceed the Settlement Proceeds Available for Claimants, then Claimants will receive a pro-rata share of the Settlement Proceeds Available for Claimants based on the amounts in Exhibit B-2.

1.9. One-half of all individual settlement payments to the Claimants who participate in the settlement will be treated as ordinary wages subject to payroll tax withholdings and one-half as liquidated damages or miscellaneous payments. Defendant is responsible for payment of the employer's share of payroll taxes as required by law, and outside the common fund. The Claims Administrator shall facilitate the transfer of additional information Defendant may require for purposes of making the required tax payments or preparing or filing requisite forms or paperwork regarding same.

2. **Taxes**

2.1. Each Claimant shall be solely responsible for the reporting and payment of his or her share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant to this Agreement.  The Released Parties, Class Counsel, and Defense Counsel do not make any representation, and it is understood and agreed none have made any representation, as to the taxability of any Claimant's portion of the Settlement Amount.

2.2. The Claimants agree to indemnify and hold harmless the Released Parties for any taxes, penalties and interest duty due by or assessed to the Released Parties on their respective receipt of payments.

3. **Dismissal of the Lawsuit**

3.1 The Parties agree to jointly file a motion to seek Court approval of this Agreement by no later than **April 21, 2022** or as otherwise required by the Court.  The Parties shall request that the Court approve the settlement and enter an order of dismissal with prejudice.

3.2 Checks issued to Claimants pursuant to this Agreement shall remain negotiable for a period of one-hundred twenty (120) calendar days from the date of the check. Claimants who fail to timely negotiate their Settlement Payments shall, like all other Settlement Class Members, remain subject to the terms of this Agreement.

4. **Releases**

4.1 Upon the Effective Date, each of the Claimants, on behalf of themselves and each of their heirs, legal representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Claims.

4.2 Upon the Effective Date, Named Plaintiffs shall also be deemed to have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all of Named Plaintiffs' Released Claims.

5. **Miscellaneous Provisions**

6.1 This Agreement constitutes the entire agreement among the Settling Parties hereto regarding the subject matter discussed herein, and no representations, warranties or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized herein.  Except as otherwise explicitly provided herein, each Settling Party shall bear its own fees, and costs.

6.2 This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.  It shall be binding upon and inure to the benefit of the Settling Parties and their respective heirs, trustees, executors, administrators, successors, and assigns; but this Agreement is not designed to and does not create any third-party beneficiaries, either express or implied.  Paragraph titles or captions contained in this

Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

      6.3    The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

      6.4    This Agreement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Ohio, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of Ohio without giving effect to that State's choice of law principles.

      6.5    The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Settling Party. No Settling Party shall be deemed the drafter of this Agreement. The Settling Parties acknowledge the terms of this Agreement are contractual and are the product of arms-length negotiations between the Settling Parties and their counsel.

      6.6    Defendant agrees to pay the costs of Mediator David Kamp. This shall be paid by Defendant, separate from and in addition to the Settlement Amount.

      6.7    The Parties hereby agree that each Party shall have the right to sue for specific performance of this Agreement, as well as declaratory and injunctive relief.

      6.8    One or more waivers of a breach of any covenant, term, or provision of this Agreement by any Party shall not be construed as a waiver of a subsequent breach of the same covenant, term or provision, nor shall it be considered a waiver of any other then-existing, preceding or subsequent breach of a different covenant, term or provision.

      6.9    If any provision of this Agreement is held to be illegal, invalid or unenforceable, or is found to be against public policy for any reason, such provision shall be fully severable; and, this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never been part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision, or by its severance from this Agreement.

      6.10    This Agreement may not be changed, altered, or modified, except in writing signed by the Settling Parties. This Agreement may not be discharged except by performance in accordance with its terms or by a writing used by the Settling Parties.

      6.11    This Agreement is written in a manner calculated to be understood by Named Plaintiffs, and they have fully read and understand the entire Agreement. Named Plaintiffs knowingly, freely, and voluntarily assent to all of the terms and conditions of this Agreement, including the waiver and release set forth herein. As part the waiver and release, Named Plaintiffs are waiving and forever releasing the Released Parties from any and all claims they have or may ever have had under the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq. ("ADEA") and/or the Older Workers' Benefit Protection Act ("OWBPA"). They are not waiving claims arising

after the date they have executed this Agreement. Named Plaintiffs understand that they may take twenty-one (21) days from the date this Agreement is presented to consider whether to execute this Agreement.  Named Plaintiffs have been advised to consult with their counsel prior to execution of this Agreement, and confirm that they have been represented by counsel throughout the negotiation of this Agreement.  Named Plaintiffs acknowledge that after executing this Agreement, they have the right to revoke only their release and waiver of claims under the ADEA and/or the OWBPA. Named Plaintiffs understand and agree that in order to be effective, such revocation must occur within seven (7) calendar days after having signed the Agreement.  Any revocation under this provision must be submitted, in writing, to counsel for Defendant, Jamie M. Goetz-Anderson, Jackson Lewis, 201 E. Fifth Street, PNC Center, 26th Floor, Cincinnati OH 45202 or via fax 513-898-0051 within seven (7) calendar days after signing this Agreement.  After seven (7) days have passed following the Named Plaintiffs' execution of this Agreement, the execution of this Agreement shall be final and irrevocable.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

WE ATTEST THAT WE HAVE CAREFULLY READ AND CONSIDERED THE FOREGOING CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT AND FULLY UNDERSTAND THE EXTENT AND IMPACT OF ITS PROVISIONS, THAT SUCH HAS BEEN EXPLAINED TO US BY OUR LAWYERS, AND THAT WE HAVE EXECUTED THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY COERCION, UNDUE INFLUENCE, THREAT OR INTIMIDATION OF ANY KIND OR TYPE WHATSOEVER, AND THAT NO OTHER PROMISES HAVE BEEN MADE TO US WITH RESPECT TO THIS MATTER.

IN WITNESS WHEREOF, the Settling Parties have executed this Agreement on the respective dates shown, as follows:

**NAMED PLAINTIFFS:**

_____    Dated: _____, ___, 2022
**KILEY THORNBURG**

_____    Dated: _____, ___, 2022
**KARCY REYMER**

_____    Dated: _____, ___, 2022
**STEPHANIE DURA**

**DEFENDANT REFLEKTIONS, LTD.**

By: *Justin Livingston*_____    Dated: 6/3/2022_____

Printed Name: Justin Livingston_____

Title: CEO_____

WE ATTEST THAT WE HAVE CAREFULLY READ AND CONSIDERED THE FOREGOING CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT AND FULLY UNDERSTAND THE EXTENT AND IMPACT OF ITS PROVISIONS, THAT SUCH HAS BEEN EXPLAINED TO US BY OUR LAWYERS, AND THAT WE HAVE EXECUTED THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY COERCION, UNDUE INFLUENCE, THREAT OR INTIMIDATION OF ANY KIND OR TYPE WHATSOEVER, AND THAT NO OTHER PROMISES HAVE BEEN MADE TO US WITH RESPECT TO THIS MATTER.

IN WITNESS WHEREOF, the Settling Parties have executed this Agreement on the respective dates shown, as follows:

**NAMED PLAINTIFFS:**

*Kiley Thornburg*            Dated: 06/03/22, 2022
**KILEY THORNBURG**

_____            Dated: _____, ___, 2022
**KARCY REYMER**

_____            Dated: _____, ___, 2022
**STEPHANIE DURA**


**DEFENDANT REFLEKTIONS, LTD.**


By: _____            Dated: _____, ___, 2022

Printed Name: _____

Title: _____

**Signature:** *KThornburg*
Kiley Thornburg (Jun 3, 2022 11:38 EDT)

**Email:** kileyt1984@yahoo.com

WE ATTEST THAT WE HAVE CAREFULLY READ AND CONSIDERED THE FOREGOING CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT AND FULLY UNDERSTAND THE EXTENT AND IMPACT OF ITS PROVISIONS, THAT SUCH HAS BEEN EXPLAINED TO US BY OUR LAWYERS, AND THAT WE HAVE EXECUTED THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY COERCION, UNDUE INFLUENCE, THREAT OR INTIMIDATION OF ANY KIND OR TYPE WHATSOEVER, AND THAT NO OTHER PROMISES HAVE BEEN MADE TO US WITH RESPECT TO THIS MATTER.

IN WITNESS WHEREOF, the Settling Parties have executed this Agreement on the respective dates shown, as follows:

**NAMED PLAINTIFFS:**

_____        Dated: _____, ___, 2022
**KILEY THORNBURG**

*Karcy Reymer*
Karcy Reymer (Jun 3, 2022 11:46 EDT)        Dated: **June 3**, 2022
**KARCY REYMER**

_____        Dated: _____, ___, 2022
**STEPHANIE DURA**


**DEFENDANT REFLEKTIONS, LTD.**


By: _____        Dated: _____, ___, 2022

Printed Name: _____

Title: _____

WE ATTEST THAT WE HAVE CAREFULLY READ AND CONSIDERED THE FOREGOING CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT AND FULLY UNDERSTAND THE EXTENT AND IMPACT OF ITS PROVISIONS, THAT SUCH HAS BEEN EXPLAINED TO US BY OUR LAWYERS, AND THAT WE HAVE EXECUTED THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY COERCION, UNDUE INFLUENCE, THREAT OR INTIMIDATION OF ANY KIND OR TYPE WHATSOEVER, AND THAT NO OTHER PROMISES HAVE BEEN MADE TO US WITH RESPECT TO THIS MATTER.

IN WITNESS WHEREOF, the Settling Parties have executed this Agreement on the respective dates shown, as follows:

**NAMED PLAINTIFFS:**

_____		Dated: _____, ___, 2022
**KILEY THORNBURG**

_____		Dated: _____, ___, 2022
**KARCY REYMER**

_[signature: Stephanie Dura (Jun 3, 2022 12:24 EDT)]_		Dated: __06,03__, ___, 2022
**STEPHANIE DURA**


**DEFENDANT REFLEKTIONS, LTD.**


By: _____		Dated: _____, ___, 2022

Printed Name: _____

Title: _____

# Exhibit B-1

### NOTICE OF COLLECTIVE ACTION LAWSUIT SETTLEMENT

### Kiley Thornburg, et al. v. Reflektions, Ltd.
### United States District Court for the Southern District of Ohio
### Case No. 2:21-cv-3905

NOTICE TO: [Enter Name and Address of Collective Member]

### This Notice affects your rights.  Please read it carefully.

The United States District Court for the Southern District of Ohio approved this Notice to inform you that the parties reached a settlement in the case: *Kiley Thornburg, et al. v. Reflektions, Ltd.,* S.D. Ohio, Case No. 2:21-cv-3905 (the "Lawsuit").  You are receiving this notice because records show that you are eligible to receive a settlement payment. **You will be eligible to receive a settlement payment if you elect to opt-in to the Lawsuit as explained below.**  If you do not opt-in to the Lawsuit, you will not receive a settlement payment and will be excluded from the settlement.

### Summary of the Lawsuit

The Lawsuit asserts that Reflektions, Ltd. failed to properly pay certain employees for all overtime hours worked under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").  More specifically, it is alleged that Reflektions failed to properly pay an overtime premium to employees who were paid on an hourly basis and who worked more than 40 total hours in any workweek through a combination of awake and sleep shifts. The Lawsuit was brought on behalf of all current and former "Direct Service Professionals" who worked for Reflektions between July 8, 2019 and (insert date of court approval of settlement).

Reflektions has denied and continues to deny that it failed to properly pay overtime, and it further denies any and all liability and damages to anyone with respect to the alleged facts and causes of action asserted in the Lawsuit. To avoid the burden, expense, inconvenience, and uncertainty of a continued legal action, however, Reflektions has concluded that it is in its best interests to resolve the Lawsuit on the terms of a Settlement Agreement, which is summarized below. By agreeing to settle, Reflektions is not admitting liability on any of the factual allegations or claims in the case or that the case can or should proceed as a class or collective action.

### Summary of the Settlement Terms

The basic terms of the settlement are as follows: Reflektions will fund a settlement pool. A total settlement payment of $225,000.00 will be allocated to the settlement pool. Individuals who submit a claim form will be entitled to a share of the respective settlement funds based on the amount of overtime damages each individual accrued while working for Reflektions.

All settlement payments will be allocated as follows: 50% to the settlement of wage claims and 50% to the settlement of claims for alleged statutory penalties.  All applicable taxes and payroll deductions will be deducted from the wage portion of the settlement payment that you are

eligible to receive. Appropriate IRS W-2 and 1099 Forms will be distributed to individuals who receive settlement payments. Individuals should consult with their tax advisors concerning the consequences of the payments they receive under the settlement.

## Options Regarding the Settlement

**Option 1** If you want to receive a settlement payment, you must complete and return a claim form by (insert date). If you timely return a completed claim form, a check will be mailed to you. You will also be deemed to have released any and all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses, whether known or unknown, pursuant to the FLSA and other applicable state wage and hour laws, for the time period between July 8, 2019 though (insert date court approves settlement).

**Option 2** If you do not wish to participate in the settlement, do nothing. If you do nothing, you will not receive money from this settlement, but you will retain your legal rights regarding any claims that you may have against Reflektions.

## Additional Information

This Notice of Collective Action Lawsuit Settlement is only an abbreviated summary of the case and the terms of the settlement. For all inquiries regarding the Lawsuit, this Notice, or the terms of the settlement should be directed to the Claims Administrator at [enter contact information].

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT OR THE JUDGE WITH INQUIRIES.**

IN ORDER TO RECEIVE A SETTLEMENT PAYMENT IN THIS CASE, YOU MUST COMPLETE, SIGN, AND RETURN THIS FORM TO NO LATER THAN **(45 DAYS AFTER MAILING).**

YOU MAY RETURN A COMPLETED AND SIGNED FORM BY MAIL, EMAIL, OR FAX TO:

> CLAIMS ADMINISTRATOR INFORMATION TO BE INSERTED

**I.      Personal Information:**

If you move, please notify the Claims Administrator of your new address. It is your responsibility to keep a current address on file with the Claims Administrator.

**II.     Consent to Join:**

I understand that by signing below, I am consenting to join the lawsuit of *Kiley Thornburg, et al. v. Reflektions, Ltd.,* S.D. Ohio, Case No. 2:21-cv-3905, as an opt-in plaintiff for settlement purposes and to participate in the claim process. I hereby designate the law firm of Mansell Law, LLC, to represent me. I consent and agree to be bound by the judgment as approved by my attorneys and approved by the Court as fair, adequate, and reasonable.

Signature (required):           _____

Print Name (required):          _____

Phone Number:                   _____

Email:                          _____

Date:                           _____

# Exhibit B-2

| LAST, FIRST | CLASS LIST ID | 2-YEAR DAMAGES |
|---|---|---|
| TOTAL DAMAGES | | $150,099.88 |
| Arehart, Samantha | 3 | $220.64 |
| Brimmer, Myah | 5 | $2,965.98 |
| Broyles - Miller, Dolly | 6 | $7,551.95 |
| Bumgartner-Pine, Ty | 7 | $336.49 |
| Burks, Christopher | 8 | $4,435.67 |
| Cochran, Abby | 9 | $641.21 |
| Cunningham, Kiley | 10 | $11,182.34 |
| Dura, Stephanie | 12 | $5,586.87 |
| Ebner, Alyssa | 13 | $38.65 |
| Eskridge, Robert | 14 | $559.87 |
| Gomez, Alicia | 15 | $924.99 |
| Gosho, Smolly | 16 | $235.99 |
| Hickok, Shain | 18 | $2,829.90 |
| Hill, Cheryl | 19 | $2,554.37 |
| Holloway, Raven | 20 | $249.51 |
| Judy, Megan | 21 | $624.42 |
| Keita, Mamadou | 22 | $188.12 |
| Kiff, Raymond | 23 | $9,808.29 |
| Kiff, Terran | 24 | $853.55 |
| Koonce, Denise | 25 | $970.44 |
| Mckolwe, Menorah | 27 | $725.70 |
| Messer, Marilyn | 28 | $2,735.01 |
| Miller, Barbra | 29 | $71.32 |
| Miller, Shawn | 30 | $11,160.97 |
| Moscato, Jennifer | 31 | $982.03 |
| Nanna, Dustin | 32 | $7,844.32 |
| O'Conner, Fatmata | 34 | $13,048.11 |
| Perry, Lauren | 35 | $79.37 |
| Porter, Amara | 36 | $2,532.79 |
| Raver, Andrea | 37 | $3,749.98 |
| Reymer, Karcy | 38 | $1,313.06 |
| Robinson, Thomas | 39 | $238.88 |
| Ronzello, Michael | 40 | $181.19 |
| Sidders, Samantha | 41 | $2,176.02 |
| Simpson, Sarah | 42 | $541.53 |
| Strauss, Lydia | 43 | $6,987.60 |
| Thompson, Kendall | 44 | $612.01 |
| Treiber, Patricia | 45 | $966.93 |
| Watendo, Emmerencia | 46 | $9,978.92 |
| Waye - Wallace, Phyllis | 47 | $114.23 |
| Winters, Sage | 49 | $2,187.72 |
| Wolf, Andrew | 50 | $7,531.97 |
| Yeboah, Kwame | 51 | $21,445.01 |
| LAST, FIRST | CLASS LIST ID | 2-YEAR DAMAGES |

| Youssef, Diaa | 52 | $135.97 |